IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY AND KATHY YODERS,

    Plaintiff,

    v.

CITY OF WASHINGTON, RON
MCINTYRE, *Code Officer*, RON
MCINTYRE, *Individually*,

    Defendants.

13cv0055
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION RE: DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DOC. NO. 41)**

**I. Introduction**

Currently before the Court is Defendants' (City of Washington and Ron McIntyre ("McIntyre"), collectively "Defendants'"), Motion for Summary Judgment. Doc. No. 41. Plaintiffs Gary and Kathy Yoders, in their Complaint and Amended Complaint, allege that Defendants unjustly used a condemnation proceeding to prevent them from accessing their property and, in doing so, Defendants wrongfully used a legal process and defamed Plaintiffs. Doc. No. 29.

Count I of the Complaint, "42 U.S.C. § 1983 Equal Protection banning Plaintiffs from use of their property and to be secure in their property," alleges that Defendants prevented Plaintiffs from the use, enjoyment, and security of their property, and in so doing violated 42 U.S.C. § 1983 and the 14th Amendment of the United States Constitution. Doc. No. 1, ¶¶ 31-38. Count II, "Wrongful use of the Legal Process," alleges that Defendants wrongfully used the legal process by threatening to arrest any party who entered Plaintiffs' property and for threatening to discontinue utility services to the property without due process. Id. at ¶¶ 39-43. Count III,

"Defamation," alleges that Defendants defamed Plaintiffs by publishing material falsehoods about the condition of their property, which harmed Plaintiffs' reputation. Id. at ¶¶ 44-48. At Count IV, Plaintiffs additionally allege that Defendants had did not properly train, supervise, or discipline Defendant McIntyre. Doc. No. 29. Defendants move this Court to grant summary judgment in their favor on all four counts. Doc. No. 41.

## II. Statement of Facts

The following are the undisputed material facts of this case:

Plaintiffs own a rental property located at Addison Street, within the city of Washington, Pennsylvania, a municipal entity. Doc. No. 40, ¶¶ 1-2, Doc. No. 43, ¶¶ 1-2.

On or about June 29, 2012, City of Washington police officers pursued Robert Noble, Plaintiffs' tenant, within their property. Doc. No. 40, ¶ 4, Doc. No. 43, ¶ 4. During the pursuit, Noble kicked a hole into a basement wall and ruptured a waterline. Doc. No. 40, ¶ 4, Doc. No. 43, ¶ 7. Noble was apprehended by the police who secured the site. Doc. No. 40, ¶ 5.

Defendant, Ron McIntyre, is an employee of the City of Washington and has served as a Code Enforcement Officer since November of 2010. Doc. No. 40, ¶¶ 3, 16, Doc. No. 43, ¶ 3. McIntyre was a former City of Washington police officer. Doc. No. 40, ¶ 15. He was summoned to Plaintiffs' property by the City of Washington Police department. Doc. No. 40, ¶ 5, Doc. No. 43, ¶ 8. McIntyre inspected the building and condemned the property. Doc. No. 40, ¶ 6.

McIntyre notified Plaintiffs of the condemnation by a letter dated June 29, 2012, and issued a summary offense citation for unsafe structure. Doc. No. 40, ¶ 9, Doc. No. 43, ¶ 10. A hearing was held before a local magistrate judge for Plaintiffs' summary offense citation. Id. at ¶ 11. Plaintiffs were found not guilty. Doc. No. 40, ¶ 11, Doc. No. 43, ¶¶ 13, 17.

Plaintiffs have pled the following additional facts which have not been addressed by Defendants:

Plaintiffs' property included a one story side addition which was deteriorating. Doc. No. 43, ¶ 11. The addition was not accessible from the main structure. Id. McIntyre did not take any steps to shut off the water at the meter before he padlocked and boarded up the property, evicted the tenants, terminated utilities, and condemned the property. Id. at ¶ 9. The basement filled with two and a half feet of water. Id. at ¶ 15. As a result, the home was damaged and the furnace and hot water tank were ruined. Id.

Plaintiffs were not permitted to access their property even after they were found not guilty of the summary citation. Id. at ¶ 13. Based upon McIntyre's assertions, Plaintiff Kathy Yoders believed that she had to communicate with McIntyre directly to regain access to their property. Id. at ¶ 21(h). Plaintiffs attempted to contact McIntyre to gain entry, but they were unable to communicate with him. Id. at ¶ 14. The City's prior Code Enforcement Officer allowed residents ten days to fix their property before the owner would be fined. Id. at ¶ 21(j). McIntyre sent "numerous letters" before taking action in "all other cases." Id. at ¶ 26.

Plaintiff Kathy Yoders attempted to have the electricity turned on, but could not because McIntyre listed the property as condemned. Id. at ¶ 21(k). McIntyre never told Plaintiffs what they needed to repair. Id. at ¶ 21(l).

McIntyre was not vetted before he was hired by Defendant City of Washington. Id. at ¶ 22(a). McIntyre is supervised by a City Council Member, Kenneth Westcott Id. at ¶ 22(d). His actions are to be reviewed before the City Solicitor, then Lance Turturice, before they are taken. Id. at ¶ 22(e). The Councilman did not meet with McIntyre in regards to Plaintiffs' property, did not know about the utility termination letters, did not know Plaintiffs were found not guilty, and

has never seen a condemnation letter. Id. at ¶ 25(b). The Councilman told McIntyre to handle everything through the City Solicitor. Id. at ¶ 24(c). The City Solicitor did not know McIntyre sent letters to terminate utility service to properties and did not advise McIntyre on utility turnoffs. Id. at ¶ 23(b). The City Solicitor did not give advice on Plaintiffs' property or the charges against them. Id. at ¶¶ 23(c)-(d). According to the City Solicitor, a series of letters need to be sent before a property is condemned and boarded up. Id. at ¶ 23(h).

Other persons, including tenants, were allowed to enter Plaintiffs' property. Id. at ¶¶ 18, 21(f). Plaintiffs have not been permitted to re-enter. Id.

The following material facts are in dispute: the state of Plaintiffs' property on June 29, 2012; whether Plaintiffs' property should have been condemned; the extent of McIntyre's training; and McIntyre's supervision or lack thereof.

### III. Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). *Manolovich v. Park*, 461 Fed. Appx. 187, 190 (3d Cir. 2012).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Smith v. Borough of Dunmore, 516 Fed. Appx. 194, 200 (3d Cir. 2013). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or

4

judge to resolve the parties' differing versions of the truth at trial. *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011); *see also S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248 (3d Cir. 2013).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – i.e., depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004) (quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001)). *Estate of Beim v. Hirsch*, 121 Fed. Appx. 950, 953 (3d Cir. 2005).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Gallup v. Clarion Sintered Metals, Inc.*, 489 Fed. Appx. 553, 555 (3d Cir. 2012), *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007).

## IV. Discussion

### a. Due Process Violation and Disparate Treatment (Count I)

The crux of Defendants' argument in support of their Motion for Summary Judgment is that Plaintiffs were informed that they would have to follow certain procedures through the local Courts to obtain access to their property and/or to avoid demolition and Plaintiffs have no cognizable claim for a due process violation or for disparate treatment because they did not avail themselves of the available channels. Defendants cite to the condemnation letter that both sides concede McIntyre sent to Plaintiffs, including the following passage:

> Therefore, from this point forward this Officer will exercise my official duty as the City of Washington Code Enforcement official and enforce the guidelines mandated by the rules and regulations by the Commonwealth of Pennsylvania, Department of Labor and Industry Uniform Construction Codes, as well as the International Building Codes that this City adheres to and recognizes and not authorize any further activity at this property until you can prove to the Court of Common Pleas that you can act responsibly and complete the needed task at hand in a reasonable amount of time.

Doc. No. 40-1. Defendants further note that the International Property Maintenance Code, which was adopted by the City, sets forth that individuals affected by a decision of a Code Official "shall have the right to appeal to the Board of Appeals . . . ." Doc. No. 40-1, 56.

Plaintiffs have advanced sufficient evidence such that a reasonable jury could conclude that Plaintiffs' property was condemned, a summary charge was issued, and the normal remedy process was impeded, because City of Washington Police were frustrated with their repeated

dealings with Plaintiffs' relative and tenant, Robert Noble. Specifically, Plaintiffs have advanced evidence that:

- Portions of the condemnation letter were not applicable to Plaintiffs (ex. language regarding previous attempts to remove debris were not accomplished) (Doc. No. 40-1, 37);
- The normal remedy in condemnation proceedings was to deal with the Court Enforcement Officer;
- The City's previous Code Enforcement Officer would send property owners a letter and a ten-day written notice to remedy any deficiencies prior to condemnation (Kathy Yoders Deposition, pg. 72, lines 7-12);
- McIntyre informed Plaintiff Kathy Yoders that he would schedule a walk-through so that she could see what needed to be repaired to prevent demolition (Kathy Yoders Deposition, pg. 55, lines 2-7, pg. 59, lines 7-14, pg. 60, lines 8-17, pg. 64, lines 11-21, McIntyre Deposition, pg. 47, lines 9-12);
- McIntyre's supervisor, Councilman Westcott, understands that a property owner is to contact McIntyre to access their property (McIntyre Deposition, pg. 11, lines 18-25);
- McIntyre repeatedly avoided communications with Plaintiffs and hung up when contact was made (Kathy Yoders Deposition, pg. 62, lines 10-22);
- Other individuals, including Plaintiffs' former tenants, were permitted to access the property after condemnation without the supposedly required Court Order (Kathy Yoders Deposition, pg. 76, lines 1-20);
- Plaintiffs were not permitted to access the property after they were found "not guilty" of the unsafe structure citation which was the basis of the condemnation (Kathy Yoders Deposition, pg. 90, lines 3-13);
- Other properties, in worse condition, were not condemned (Kathy Yoders Deposition, pg. 63, lines 13-17); and
- City officials indicated through non-verbal signals that Plaintiffs' property was condemned and not accessible to Plaintiffs because police were frustrated with their repeated encounters with Robert Noble (Kathy Yoders Deposition, pg. 53, lines 13-13-24, pg. 54, lines 1-2).

All of this evidence contradicts Defendants' assertion that Plaintiffs' only available legal means of accessing their property after it was condemned was through the court system and supports Plaintiffs' claims that the only available remedy truly available, a walk-through with McIntyre to assess the property's deficiencies, was denied to them. Further, it is disputed

whether or not Plaintiffs' property should have been condemned and whether McIntyre's alleged failure to turn off the water exacerbated the damage. Plaintiffs have sufficiently supported their claim for due process violations and disparate treatment. Therefore, Defendants' Motion for Summary Judgment as to Count I will be denied.

### b. *Negligent Hiring, Supervision, and Training (Count IV)*

Defendants move this Court to grant summary judgment in their favor on Plaintiffs' Negligent Hiring, Supervision, and Training claim because of: immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, *et seq.*; qualified immunity; and/or Plaintiffs' failure to demonstrate a pattern of constitutional violations to establish deliberate indifference. Doc. No. 42, 10-11.

Plaintiffs allege that the Defendants' actions were willful, reckless, wanton, and in reckless indifference to their rights. Plaintiffs allege more than mere negligence. Therefore, the Political Subdivision Tort Claims Act does not provide immunity for Defendants. Plaintiffs have supported their claim for negligent hiring, supervision, and training with the following evidence:

- McIntyre was previously employed by the City of Washington Police Department until he was injured on duty and had to take disability retirement (McIntyre Deposition, pg. 5, 5-13);
- McIntyre was offered the position of Code Enforcement Officer by a City official in 2010 (McIntyre Deposition, pg. 6, lines 10-13);
- McIntyre was hired and approved by City Council (Turturice Deposition, pg. 12, lines 8-11);
- McIntyre had no training or experience in code enforcement before he was hired (McIntyre Deposition, pg. 49, lines 18-20, Turturice Deposition, pg. 6, lines 15-16);
- McIntyre's only training for his position was "on the job" (McIntyre Deposition, pg. 8, line 14);
- McIntyre has attended: a four-hour course on blight, a two or three day night class on fighting blight, and a four-hour course on modular housing (McIntyre

Deposition, pg. 10, lines 13-14, pg. 12, lines 1-2, pg. 13, lines 1-15, pg. 14, lines 13-14, pg. 15, lines 6-7);
- Councilman Westcott told McIntyre to "handle everything through the solicitor, make sure he was doing everything properly and by law." The Solicitor's involvement with McIntyre was described as "not much" (Westcott Deposition, pg. 7, lines 2-9, pg. 8, lines 7-9, Turturice Deposition, pg. 9, line 12);
- City officials were not aware that McIntyre contacts utility service companies to cut off utilities to a property (Turturice Deposition, pg. 8, lines 4-7, Westcott, pg. 6, lines 15-19);
- Supervisors became aware that McIntyre did not follow normal procedure in condemning Plaintiffs' property, *ie.*, did not send multiple letters (Turturice Deposition, pg. 26, line 14-pg. 27, line 10);
- City Solicitor Turturice expressed concerns about McIntyre to City Council and felt that McIntyre was not "doing everything right" (Turturice Deposition, pg. 13, lines 4-10, pg. 24, lines 10-12);
- Letters sent to property owners by McIntyre are not reviewed (Turturice Deposition, pg. 17, lines 19-pg. 18, line 4);
- McIntyre did not discuss Plaintiffs' property with his supervisor, Councilman Westcott, during their monthly meeting (Westcott Deposition, pg. 5, lines 11-19); and
- Councilman Westcott was not aware that McIntyre filed charges against Plaintiffs (Westcott Deposition, pg. 9, lines 13-21)

Defendants contend that Plaintiffs' § 1983 claim fails because Plaintiffs have not demonstrated a pattern of constitutional depravations to demonstrate deliberate indifference and Defendants' actions were reasonable under the circumstances. Contrary to Defendants' assertion, Plaintiffs have advanced evidence of a pattern of behavior that may have deprived property owners of their constitutional rights including that Council Member Westcott has received complaints about McIntyre from other property owners. Westcott Deposition, pg. 23, lines 16-25 ("Ron has got a little bit of a short fuse sometimes . . . ."). There is sufficient evidence such that a reasonable factfinder could determine that Defendants' actions were not reasonable and find for Plaintiffs on this count. Therefore, Defendants' Motion for Summary Judgment as to Count IV-Negligent Hiring, Supervision, and Training will be denied.

*c. Wrongful Use of Legal Process (Count II)*

Defendants move this Court to grant summary judgment in their favor on Plaintiffs' claim for wrongful use of legal process. Plaintiffs' claim is based upon Defendants' alleged threats to have Plaintiffs arrested if they entered their property and the ability of the City of Washington Police department to carry out such threats. Doc. No. 1, ¶¶ 40-42.

To sustain a claim for wrongful use of legal proceedings, Plaintiffs must establish that Defendants: (1) used the legal process against Plaintiffs without probable cause; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to Plaintiffs. *Cruz v. Princeton Ins. Co.*, 972 A.2d 14, 15 n.1, n. 5 (Pa. Super. Ct. 2009).

Plaintiffs do not specifically address this count in their Brief in Opposition to Defendants' Motion for Summary Judgment. Doc. No. 44. Plaintiffs' allegations as to this count are more properly subsumed in Count I. Plaintiffs' allegations do not demonstrate that the legal process was used, only that threats were made. Any harm that resulted from the threats are inextricably linked to any harm caused the denial of access to their property. These issues will be determined by the jury in Count I.

Therefore, Defendants' Motion for Summary Judgment as to Count II-Wrongful Use of Legal Process will be granted.

*d. Defamation (Count III)*

Finally, Defendants move this Court to grant summary judgment in their favor as to Count III, a state law claim for defamation. Doc. No. 42, 9. Plaintiffs contend that they have been publically accused in local newspapers of "material falsehoods" relating to the condemnation of their property, the house's unsafe structure, and that McIntyre leaked specific information about the house to the newspaper. Doc. No. 1, 10; Doc. No. 44, 10. Plaintiffs allege

they were embarrassed as a result of the publication and the negative attention it drew to them. Id. Plaintiffs fail to fully address Defendants' Motion for Summary Judgment in their Brief in Opposition, stating only vague and inapplicable state law in support of their position. Doc. No. 44, 10.

A plaintiff in an action for defamation has the burden of proving, in relevant part: (1) the defamatory nature of the communication; (2) its publication by the defendant; and (3) the special harm that resulted from the statement. 42 Pa. C.S.A. §8343(a). A defendant may respond in defense by proving, among other things, the truth of the defamatory communication. 42 Pa. C.S.A. §8343(b). Truth is "a complete and absolute defense." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 923 (3d Cir. 1990). Here, Plaintiffs have failed to advance sufficient evidence to support their claim against Defendants for defamation.

Regarding the requirement that a plaintiff prove that a statement was published by the defendant, Plaintiff Karen Yoders admitted in her deposition that she did not know the source of the newspaper articles that stated marijuana was growing in the property's backyard. Deposition, pg. 68, lines 1-16. Plaintiff Karen Yoders also admitted that she cannot "prove that McIntyre published [statements regarding condemnation] in the paper." Deposition, pg. 95, lines 19-22. Yoders even noted that she has "no way of knowing" if Defendant McIntyre published the articles and that she can only assume he was responsible. Deposition, pg. 68, lines 14-16; pg. 79, lines 1-6. Assumptions are not enough to support this claim. Plaintiffs fail to establish that either Defendant City of Washington or Defendant McIntyre published the newspaper articles, or contributed to them.

Similarly, Plaintiffs fail to prove the third requirement of a defamation claim because they have not shown a special harm resulting from the publication. Plaintiff Karen Yoders has

not advanced any evidence of a special harm, noting only a general feeling of embarrassment after calls from unidentified members of the community. Deposition, pg. 95, lines 19-22. Yoders did not sufficiently prove that either she or her husband suffered special harm as a result of the alleged defamation.

Additionally, Defendants effectively raise the affirmative defense of truth with respect to published statements of the building's condemnation. An article in the Observer Reporter, which includes specific references to the Plaintiffs' Complaint, noted that McIntyre "condemned the building because of the damage [done during the pursuit of Robert Noble]." Doc. No. 40, 40. By Plaintiff Karen Yoders' own admission, the building was condemned. Deposition, pg. 95, lines 11-13. Though falsity is not an element of a defamation claim, Plaintiff Karen Yoders also admitted that she cannot identify any part of any of the articles that is untrue. Deposition, pg. 100, lines 4-7. Therefore, Defendant has proven the defense of truth to Plaintiffs' defamation claim.

For the foregoing reasons, Defendants' Motion for Summary Judgment as to the Count III-defamation will be granted.

V. **Conclusion**

Plaintiffs have advanced sufficient evidence to support the gravamen of their dispute. However, Plaintiffs' claims for wrongful use of legal process and defamation are not supported such that a reasonable jury could find in their favor and these claims will not be permitted to proceed to trial. An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties